CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE
I. INTRODUCTION
Plaintiff Lou Moua is a former employee of Defendant Optum Services, Inc. ("Optum"), and its parent company, UnitedHealth Group, Inc. ("UHG"). Plaintiff brings this action alleging various violations of state law arising out of her employment and the termination of her employment. (Dkt. 1-2 [Complaint, hereinafter "Compl."].) Defendants now move to compel arbitration. (Dkts. 9 [Notice of Motion and Motion], 9-2 [Memorandum of Points and Authorities, hereinafter "Mot."].) Defendants claim that Plaintiff entered into an arbitration agreement that covers the instant dispute. For the following reasons, the Court finds that the arbitration agreement is unenforceable and DENIES Defendants' motion.[1]
II. BACKGROUND
Plaintiff alleges that she began working for Optum on or about January 31, 2005, as a Claims Representative. (Compl. ¶ 9.) According to Defendants, Plaintiff's employment with Optum was terminated on July 3, 2007. (Dkt. 13-1 [Declaration of Amy Gregoire] ¶ 4.) Then, in February 2008, Plaintiff applied for a Claims Examiner position with UHG and was rehired, effective March 31, 2008. (Id. ¶ 5.)
When Plaintiff was re-hired, she received an offer letter, dated March 18, 2008. (Dkt. 9-6 Ex. 1.) The second page of the letter includes a section entitled: "Conditions of Your Employment with UnitedHealth Group." (Id. at 2.) This section explains that Plaintiff's employment was conditional on her agreement to arbitrate all employment-related disputes. (Id. ) It also states that Plaintiff would be required to "electronically acknowledge" her understanding of the arbitration agreement once she began her employment. (Id. )
The offer letter also attaches a copy of UHG's Employment Arbitration Policy ("Policy"). (Id. at 8-17 [Policy].) The Policy contains various provisions indicating what types of disputes are covered by arbitration and the rules governing the arbitration *1112 proceeding. (See generally id. ) As relevant here, Section D of the Policy contains a modification provision that allows UHG to modify or terminate the terms of the agreement. The modification provision states:
UnitedHealth Group reserves the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days notice of its intent and the substance of any amendment, modification, or termination of the Policy. Notice may be effected by the positing of the notice on the UnitedHealth Group intranet website. The Policy may only be amended, modified, or terminated in writing, effective on January 1 of any year, by the authority of the Senior Executive for Human Capital.
(Id. § D.) Further, Section E provides that "[a]ll arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Employee Relations Department receives the Demand for Arbitration." (Id. § E ¶ 2.) The Policy also provides that a court may sever any portion of the Policy that is found void or unenforceable. (Id. § C.23.)
On March 31, 2008, Plaintiff electronically acknowledged review and receipt of the Policy. (Dkt. 9-6 Ex. 2.) Defendants attach the copy of the Policy that Plaintiff signed to their motion. (Id. ) Nevertheless, Plaintiff declares that she was not informed about any arbitration agreement, including the Policy. (Dkt. 12-1 [Declaration of Lou Moua] ¶ 4.) Plaintiff attests that no one explained how the Policy operates, whether it was required, or whether she could negotiate the terms. (Id. ¶ 5, 7-9.) Plaintiff further declares that she was not provided a copy of the arbitration rules, including those of the American Arbitration Association ("AAA"). (Id. ¶ 6.)
Plaintiff alleges that her employment was terminated as of May 16, 2016. (Compl. ¶ 17.) At the time, Defendants represented that the termination was a result of the company's decision to relocate Plaintiff's entire department from California to other states. (Id. ¶ 18.) Plaintiff claims that this purported explanation is pretext for Defendants' true motive, which includes discrimination and an unwillingness to provide Plaintiff with reasonable accommodations. (Id. ) Accordingly, Plaintiff filed this action against Defendants on August 4, 2017. (See generally Compl.) Defendants now move to compel arbitration based on the terms of the Policy, federal law, and California state law. (See generally Mot.)
III. ANALYSIS
Under the Federal Arbitration Action ("FAA"), a "written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. The FAA reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion , 563 U.S. 333, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011) ; see also Circuit City Stores, Inc. v. Adams , 279 F.3d 889, 892 (9th Cir. 2002) ("The [FAA] not only placed arbitration agreements on equal footing with other contracts, but established a federal policy in favor of arbitration."). In deciding whether to enforce an arbitration agreement, the court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." Cox v. Ocean View Hotel Corp. , 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *1113 Chiron Corp. v. Ortho Diagnostic Sys., Inc. , 207 F.3d 1126, 1130 (9th Cir. 2000) ); see also 9 U.S.C. § 2.
Here, the parties only dispute the first issue-whether the agreement to arbitrate is valid. The determination of the arbitration agreement's validity is a question of contract interpretation and governed by state law. Circuit City , 279 F.3d at 892. Section 2 of the FAA, i.e. , the saving clause, "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract,' including generally applicable contract defenses, such as fraud, duress or unconscionability." Concepcion , 131 S.Ct. at 1746 (quoting 9 U.S.C. § 2 ).
1. Illusory Agreement
Plaintiff claims that the Policy Defendants seek to enforce is illusory.[2] An agreement is illusory, and no enforceable contract has been created, if a promisor is "free to perform or to withdraw from the agreement at his own unrestricted pleasure." Mattei v. Hopper , 51 Cal. 2d 119, 122, 330 P.2d 625 (1958). Generally, "[a] contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder." Harris v. Tap Worldwide, LLC , 248 Cal. App. 4th 373, 385, 203 Cal.Rptr.3d 522 (2016).
Plaintiff argues that the Policy is illusory because Section D gives UHG the unilateral right to "amend, modify, or revoke," the agreement. (Dkt. 12 [Opposition, hereinafter "Opp."] at 9.) Section D provides that UHG may make any such modification, in writing, after providing 30 days' notice. (Policy § D.) Section E further provides that any arbitration will be conducted under the terms of the Policy that was in effect on the date "the Corporate Employee Relations Department receives the Demand for Arbitration." (Id. § E ¶ 2.) Under these provisions, UHG may alter or terminate the Policy, without any employee's consent, and the alteration or termination would apply to a claim that has already accrued but for which a Demand for Arbitration has not yet been served.
In Peleg v. Neiman Marcus Grp., Inc. , 204 Cal. App. 4th 1425, 140 Cal.Rptr.3d 38 (2012), the court invalidated an arbitration agreement with a similar modification provision. The provision stated that "the employer may amend, modify, or revoke the arbitration contract on 30 days' written notice; at the end of the 30-day period, a contract change applies to any claim that has not been filed with the American Arbitration Association (AAA)." Id. at 1432-33, 140 Cal.Rptr.3d 38. The court found that this provision rendered the contract illusory under California law because it allowed modifications to apply to claims that had already accrued at the time of the modification.[3] Id. at 1465, 140 Cal.Rptr.3d 38. In other words, the provision expressly provided that any modifications would not apply *1114 to claims that had been filed before the modification was implemented. But, the modifications would apply to claims that the employer knew about or that had already accrued, if those claims had not been filed with the AAA. This made it possible for the employer to unilaterally change the terms of the agreement to its benefit when it anticipated a particular claim would be filed. Id. at 1459, 140 Cal.Rptr.3d 38 ("The vice of the modification provision in this case is that it allows the employer to manipulate the arbitration process, tailoring it to fit specific cases, either by making the process more difficult or more expensive for the employee, or by revoking the Agreement in the belief that a judicial forum is preferable."); cf. Harris , 248 Cal. App. 4th at 386, 203 Cal.Rptr.3d 522 (modification provision that applied modifications to all claims "arising after the effective date of the modification" did not render the agreement illusory).
The Peleg court drew a key distinction between agreements that were silent on whether a modification would apply to accrued or known claims, and those that expressly applied a modification to those claims. The court held that agreements that are silent on the issue are not rendered illusory because the implied covenant of good faith and fair dealing restricts modifications from applying to accrued or known claims. Id. at 1465, 140 Cal.Rptr.3d 38 ("A unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims."). However, if "a modification provision expressly addresses whether contract changes apply to claims that have accrued or are known to the employer, the covenant cannot create implied terms that contradict the express language." Id. Instead, such a modification provision renders the agreement illusory. Id.
The principles articulated in Peleg directly apply here. The Policy here states that the only claims exempt from UHG's unilateral modification are those that have been served on the Corporate Employee Relations Department. (Policy § E.) The express terms provide that claims that are known to UHG or that have already accrued are not exempt from modifications if the company has not been served with a Demand for Arbitration. (Id. ) The Policy therefore suffers from the very same problem as the agreement in Peleg , which renders the Policy illusory. Moreover, because the express terms provide which claims will be exempt from modifications, the covenant of good faith and fair dealing cannot apply to save the Policy from being unenforceable.
2. Severance
Defendants request that the Court sever any unenforceable provision of the Policy rather than hold the entire agreement unenforceable. (Mot. at 10-11.) To determine whether an unlawful contract may be cured through severance, "[c]ourts are to look to the various purposes of the contract." Armendariz v. Found. Health Psychcare Servs., Inc. , 24 Cal. 4th 83, 124, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000). "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." Id.
The Court finds that the modification provision of the Policy taints the entirety of the agreement such that severance is not a viable option. The modification provision is not collateral to the main purpose of the Policy, but rather creates an imbalance of mutuality between the employer and the employee. This imbalance renders the agreement's entire purpose-to *1115 impose arbitration-an illusory promise. Severance therefore is not a cure. The only remedy is reformation of the contract, but the Court is without authority to compel reformation to change an unlawful provision. Id. at 125, 99 Cal.Rptr.2d 745, 6 P.3d 669. Because the Court is not authorized to reform the agreement, the Court must instead find the entire Policy void. Id. (Where a court is unable to cure "through severance or restriction, and is not permitted to cure it through reformation and augmentation, it must void the entire agreement.").
IV. CONCLUSION
For the foregoing reasons, Defendants' motion to compel arbitration is DENIED.

Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. See Fed. R. Civ. P. 78 ; Local Rule 7-15. Accordingly, the hearing set for February 5, 2018, at 1:30 p.m. is hereby vacated and off calendar.

Plaintiff also argues that the Policy is unconscionable. Because the Court finds that the Policy is an illusory contract, the Court does not address Plaintiff's arguments related to unconscionability.

The Peleg court determined that Texas law governed the contract at issue, but expressly held that its analysis aligned with fundamental policies of California law. Peleg , 204 Cal. App. 4th at 1463-66, 140 Cal.Rptr.3d 38. Subsequent cases discussing California state law have cited Peleg as authority. See, e.g. , Peng v. First Republic Bank , 219 Cal. App. 4th 1462, 1474, 162 Cal.Rptr.3d 545 (2013), as modified (Oct. 2, 2013) ("[B]ecause the agreement at issue in Peleg specifically allowed retroactive modifications, the court held the agreement to arbitrate was illusory and invalid under California law.").