

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| MEGHANN PATRICK, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD81344 |
| | ) | |
| ALTRIA GROUP DISTRIBUTION | ) | FILED: March 5, 2019 |
| CO., et al., | ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Jackson County**
**The Honorable Marco Roldan, Judge**

**Before Division Two: Alok Ahuja, P.J., and Thomas H. Newton**
**and Mark D. Pfeiffer, JJ.**

Meghann Patrick is a former employee of Altria Group Distribution Company. After her employment was terminated, Patrick sued Altria and a supervisor at Altria, alleging employment-related claims under the Missouri Human Rights Act, § 213.010, RSMo *et seq*. The defendants moved to compel arbitration and stay the civil action. The circuit court denied the defendants' motion, and they appeal. We affirm.

## Factual Background

Patrick was hired by Altria in November 2007 as a Territory Sales Manager. At the time she began her employment, Patrick agreed to a dispute resolution program which included an arbitration provision.

In February 2012, Altria distributed to employees a revised dispute resolution agreement, which superseded the earlier agreement.[1] Patrick executed the revised agreement on February 10, 2012. The agreement established a dispute resolution program which provided various options for addressing workplace disputes. The program describes four dispute resolution options: The Open Door Policy, The Company Ombudsperson, Mediation, and Arbitration. The first three dispute resolution mechanisms were optional and non-binding. By contrast, under the agreement all workplace disputes were subject to mandatory and binding arbitration.

The agreement defined a covered "dispute" to mean

any legal or equitable claim, demand, dispute or controversy, whether based in tort, in contract, under statute, by common law, or alleging a violation of any legal obligation, by and between the Parties, that arises out of or relates in any way to the employment relationship between [Patrick] and [Altria] . . . including claims which relate to, arise from, concern or involve in any way:

. . . .

2.      separation from employment of an Employee, whether involuntary, voluntary or "constructive", the terms and conditions of employment, the cessation of employment, wages alleged to be owed which are required to be paid pursuant to state or federal statute, and benefits (including any modification, amendment or termination of a benefit plan) or incidents of employment with [Altria];

. . . .

4.      any other matter arising out of or related in any way to the employment relationship between [Patrick] and [Altria] including, by way of example and without limitation, allegations of: discrimination or harassment based on race, sex, religion, age, marital status, pregnancy, national original or disability or other bases; unpaid

---

[1]      The 2012 agreement consisted of two separate documents:  an "Agreement to the Dispute Resolution Program," which both Altria and Patrick executed; and the "Dispute Resolution Program" itself, which was incorporated by reference into the Agreement. Because the distinction between the two documents is not relevant to the issues raised in this appeal, for ease of reference we refer to the two documents collectively as "the agreement."

wages or expenses; harassment prohibited by state or federal statute or the common law; retaliation or whistleblower claims, including workers' compensation retaliation; defamation; infliction of emotional distress; and violation(s) of any federal, state, local or other governmental constitution, statute, ordinance, regulation or common law.

The agreement excluded from the definition of a "dispute" (1) issues relating to the formation, interpretation or enforceability of the agreement; (2) any claim that the class action waiver in the agreement is void or voidable; and (3) any claim for workers' compensation benefits, state disability insurance benefits, or unemployment compensation benefits.

The agreement provided that, "[i]n the event you and [Altria] are unable to resolve, or choose not to resolve, any such legal dispute through any of the other dispute resolution options, you and [Altria] agree to arbitrate any such legal dispute under the terms of the Program rather than pursue a lawsuit."

The agreement gave Altria the power to unilaterally amend or terminate the dispute resolution program. The agreement defined a "Material Amendment" as "a change or modification of the Program that significantly changes a substantive provision relating to arbitration under the Program, such as a change in the allocation of fees and costs, the Disputes covered, or the limitations on remedies." A "Non-Material Amendment" was defined as "any change to the Program which is not a Material Amendment." The agreement provided:

1. [Altria] may make a Non-Material Amendment at any time with or without notice.

2. [Altria] may make a Material Amendment at any time, provided that:

   a) no such amendment will apply to a Dispute previously submitted to arbitration under the Program; and

   b) no such amendment will be effective until notice of the amendment is published to Employees in a reasonable manner, such as electronically through [Altria's] Intranet or

3

electronic mail system (proof of actual receipt by an Employee is not necessary).

> 3. [Altria] may terminate this Program at any time, provided that:

>> a) the Program will remain in full force and effect for any Dispute previously submitted to arbitration under the Program; and

>> b) termination will not be effective until 30 days after notice of termination is published to Employees in a reasonable manner, such as electronically through [Altria's] Intranet or electronic mail system (proof of actual receipt by an Employee is not necessary).

Altria terminated Patrick's employment in March 2016. Patrick filed an administrative complaint against Altria and supervisor John Hartnett with the Missouri Human Rights Commission. Following receipt of a right to sue letter from the Commission, Patrick filed suit against Altria and Hartnett in the Circuit Court of Jackson County on July 21, 2017.[2] She asserted claims under the Missouri Human Rights Act for gender discrimination, sexual harassment/hostile work environment, and retaliation.

Altria filed a Motion to Compel Arbitration and Stay Action. The motion alleged that a valid and binding arbitration agreement existed between Patrick and Altria, which required Patrick to pursue her claims in arbitration. Patrick opposed the motion. She argued, among other things, that the dispute resolution agreement was not enforceable because it was not supported by adequate consideration.

The circuit court denied Altria's motion to compel arbitration. It concluded that because Altria was given the right to unilaterally modify or terminate the dispute resolution agreement, the agreement was not supported by mutual consideration, and was therefore "invalid and unenforceable."

---

[2] We refer to Altria and Hartnett collectively as "Altria" in the remainder of this opinion.

Altria appeals.[3]

## Discussion

Altria argues that the circuit court erred in denying its Motion to Compel Arbitration and Stay Action because the parties were bound by a valid and enforceable arbitration agreement that was supported by adequate consideration. In response, Patrick argues, among other things, that Altria's promises in the dispute resolution agreement were illusory and do not constitute bargained for consideration, because Altria retained the unilateral right to modify or terminate its obligations under the agreement.

The issue of "[w]hether the trial court should have granted a motion to compel arbitration is a question of law decided *de novo*." *Ellis v. JF Enters., LLC*, 482 S.W.3d 417, 419 (Mo. 2016) (citation omitted).

> When faced with a motion to compel arbitration, we must consider three factors. First, we must determine whether a valid arbitration agreement exists. Second, if a valid arbitration agreement exists, we must determine whether the specific dispute falls within the scope of the arbitration agreement. Third, if a valid arbitration contract exists, and if the subject dispute is within the scope of the arbitration provision, then we must determine whether the arbitration agreement is subject to revocation under applicable contract principles. In making these determinations, we should apply the usual rules of state contract law and canons of contract interpretation.

*Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 434-35 (Mo. App. W.D. 2010) (citations and internal quotation marks omitted).

"Under both the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the Missouri Uniform Arbitration Act, chapter 435, RSMo, whether the parties entered into an enforceable arbitration agreement is a preliminary issue for the court to

---

[3] The order denying Defendants' motion to compel arbitration is immediately appealable. *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 527 n.2 (Mo. 2009) ("This Court recognizes the appealability of orders denying arbitration despite the fact that such orders are not final judgments, under the influence, if not the command of provisions of the Federal Arbitration Act and the Missouri Uniform Arbitration Act relating to appealability of such orders.") (citing 9 U.S.C. § 16(a)(1)(B) and § 435.440.1, RSMo).

5

decide, applying Missouri law." *Johnson v. Vatterott Educ. Ctrs., Inc.*, 410 S.W.3d 735, 738 (Mo. App. W.D. 2013) (citations omitted). In Missouri, "[t]he essential elements of any contract, including one for arbitration, are offer, acceptance, and bargained for consideration." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (citation and internal quotation marks omitted).

The only contractual element at issue in this case is whether the parties exchanged consideration for the Agreement. "Consideration consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Id.* (citation and internal quotation marks omitted). Mutual promises can constitute adequate consideration to support an enforceable contract.

> [B]ilateral contracts are supported by consideration and enforceable when each party promises to undertake some legal duty or liability. These promises, however, must be binding, not illusory. A promise is illusory when one party retains the unilateral right to amend the agreement and avoid its obligation.

*Id.* at 777 (citations omitted); *see also Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 116 (Mo. 2018); *Frye*, 321 S.W.3d at 442 ("A contract that purports to exchange mutual promises will be construed to lack legal consideration if one party retains the unilateral right to modify or alter the contract as to permit the party to unilaterally divest itself of an obligation to perform the promise initially made.").

In *Baker*, the Missouri Supreme Court found an employer's promise to arbitrate its claims against an employee to be illusory where the employer retained the "'right to amend, modify or revoke this agreement upon thirty (30) days' prior written notice to the Employee.'" 450 S.W.3d at 776 (quoting agreement). Because the agreement permitted the employer to modify the arbitration agreement retroactively, the Supreme Court held that it was illusory and could not supply adequate consideration. The Court explained:

> The fact that Bristol must give prior written notice of an amendment to the arbitration agreement does not preclude Bristol from giving Baker prior written notice that, effective in thirty days, Bristol retroactively is disclaiming a promise made in the arbitration agreement. For instance, if in the course of an ongoing arbitration process, Bristol concluded that the process was not favorable, Bristol could provide Baker notice that, effective in 30 days, it no longer would consider itself bound by the results of the arbitration. While the dissent concludes summarily that no court would adopt a construction of the agreement allowing Bristol to disclaim or modify its arbitration promises unilaterally at any time for its own benefit, the fact remains that the language of the agreement would permit Bristol to do just that.
>
> . . . . Contracts, like the arbitration agreement in this case, that permit unilateral, retroactive amendment are deemed illusory and do not constitute consideration to create an enforceable contract.

*Id.* at 777 (citations omitted).

The fact that an employer has the unilateral right to amend an arbitration agreement may not render the agreement illusory, if the employer's power to modify the agreement is meaningfully restricted. In *Frye*, 321 S.W.3d 429, we recognized that "limiting an employer's unilateral right to amend an arbitration agreement to amendments that [(1)] are prospective in application and [(2)] about which employees have been afforded reasonable advance notice may prevent an employer's mutual promise from being rendered illusory." *Id.* at 443.

In this case, the agreement gives Altria the unilateral right to make "material amendments" to the dispute resolution agreement, which may include "change[s] in the allocation of fees and costs, the Disputes covered, or the limitations on remedies." Altria's right to make such material—and unilateral—modifications is not limited in the fashion *Frye* contemplated: (1) the agreement does not limit material modifications to prospective-only application; and (2) the agreement does not require Altria to give advance notice of material modifications to employees. Instead, the agreement only prohibits material amendments from affecting "a Dispute previously submitted to arbitration under the Program"—which

7

means that a material amendment *could* apply to claims which have accrued, and of which Altria has notice, but which have not yet been submitted to arbitration. (Such "accrued-but-unasserted" claims would include claims in which an employee had invoked the voluntary and non-binding dispute resolution mechanisms specified in the agreement.) In addition, the agreement does not require that Altria provide *advance* notice of material amendments to its employees: the agreement provides that material amendments become effective upon the publication of notice to employees, meaning that employees are given *contemporaneous*—but not *advance*—notice of material amendments to the dispute resolution agreement.[4]

Thus, under Altria's dispute resolution agreement, if an employee had complained to the company about alleged employment discrimination, but had not yet commenced arbitration proceedings, Altria would have the ability to modify the dispute resolution agreement to eliminate discrimination claims from the scope of arbitrable disputes, and the employee would have no ability to invoke arbitration before that modification became effective. Given Altria's ability to materially modify the dispute resolution agreement with respect to accrued claims, and without prior notice to employees, its promise to arbitrate is illusory, and cannot constitute adequate consideration to support the dispute resolution agreement's enforceability.

Although we are not aware of any reported Missouri decisions addressing this precise issue, numerous courts in other jurisdictions have held that a party's promise to arbitrate is illusory where it retains the unilateral right to modify the arbitration agreement with respect to claims which have accrued, but are not yet in arbitration. In some of these cases, the courts have held that the application of

---

[4]     The material amendments provision contrasts with the agreement's termination provision, which provides that Altria may not terminate the program "until *30 days after* notice of termination is published to Employees." (Emphasis added.)

8

unilateral contract modifications to accrued-but-unasserted claims renders an

arbitration agreement illusory, *even if* the other party is provided with advance

notice of the contract modifications.  As the California Court of Appeal explained in

a case in which an employer could alter an arbitration agreement on 30 days' notice,

applicable to any claims for which arbitration had not yet been initiated:

> We do not suggest the Agreement is unenforceable solely
> because it exempts *filed* claims from contract changes.  Rather, the
> Agreement fails because it exempts *only* filed claims—it does not go far
> enough.  The Agreement should also exempt claims that have accrued
> or are known to the employer that are *not* filed within 30 days.
> Otherwise, Neiman Marcus would have the unfettered unilateral right
> to modify the arbitration process or terminate the Agreement as to
> those claims.  It would retain the ability to pick and choose the claims
> it wants to arbitrate, making the company's performance optional and
> thus illusory.
>
> . . . .
>
> The vice of the modification provision in this case is that it
> allows the employer to manipulate the arbitration process, tailoring it
> to fit specific cases, either by making the process more difficult or more
> expensive for the employee, or by revoking the Agreement in the belief
> that a judicial forum is preferable.  Accordingly, if a claim has accrued
> or if the employer knows about a claim, all parties to the Agreement
> should be bound by the version in effect at that time; ***no changes
> should apply after the point of accrual or knowledge***.

*Peleg v. Neiman Marcus Grp., Inc.*, 140 Cal. Rptr.3d 38, 61, 63 (App. 2012) (Texas

law) (emphasis added; citations, brackets, and internal quotation marks omitted).[5]

In other cases, courts have held that arbitration promises are illusory where

a party has the unilateral right to modify an arbitration agreement with respect to

accrued-but-unasserted claims, *and* the other party is not given advance notice of

---

[5]    *See also, e.g.*, *Moua v. Optum Servs., Inc.*, 320 F. Supp.3d 1109, 1113–14
(C.D. Cal. 2018); *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp.3d 1243, 1252–53 (C.D.
Cal. 2016); *Cummings-Reed v. United Health Group*, 2:15-CV-02359-JAM-AC, 2016 WL
1734873, at *3–4 (E.D. Cal. May 2, 2016); *Keanini v. United Healthcare Servs., Inc.,* 33 F.
Supp. 3d 1191, 1197–99 (D. Haw. 2014); *Reyes v. United Healthcare Servs., Inc.*, 2014 WL
3926813, at *2–*3 (C.D. Cal. Aug. 11, 2014); *Flemma v. Halliburton Energy Servs., Inc.*, 303
P.3d 814, 822 (N.M. 2013).

the modifications (so that it could initiate arbitration under the unmodified agreement). As the Texas Court of Appeals explained, without advance notice of contract modifications,

> once a claim arises, the forum in which that claim will be decided hinges not on mutually binding promises, but on a race between employer and employee, with the party who acts first controlling the outcome. While [the employer] may force the employee to fulfill her promise and arbitrate claims, the employer is bound to its own reciprocal promise only when the employee reaches the arbitrator's door before the employer can unilaterally revise or terminate the agreement without notice and at its own discretion. Because [the employer's] ability to select which claims it arbitrates is restrained only by the speed at which it can alter or terminate the Agreement before formal arbitration commences, its promise was illusory.

*Temp. Alts., Inc. v. Jamrowski*, 511 S.W.3d 64, 70 (Tex. App. 2014). These cases hold that a contracting party must be given sufficient advance notice of unilateral modifications of an arbitration agreement, so that it has an opportunity to invoke the unmodified arbitration procedures if it chooses.[6]

It is unnecessary in this case to decide whether an arbitration agreement is _always_ illusory if a party is given the power to modify the agreement as to accrued claims, or whether *advance notice* of unilateral modifications is sufficient to avoid a finding that the agreement is unenforceable. In this case, Altria's dispute resolution agreement fails under either standard: it plainly allows Altria to make unilateral, material modifications to the agreement which apply to accrued-but-unasserted claims; but the agreement also provides that those amendments become effective without any advance notice to employees. Thus, under either of the approaches discussed above, Altria's modification power renders its promise to

---

[6] *See, e.g.*, *Henry & Sons Constr. Co., Inc. v. Campos*, 510 S.W.3d 689, 693–95 (Tex. App. 2016); *Jaworski v. Ernst & Young U.S. LLP*, 119 A.3d 939, 947–48 (N.J. Super. Ct. App. Div. 2015); *Pierce v. Kellogg, Brown & Root, Inc.*, 245 F. Supp.2d 1212, 1215 (E.D. Okla. 2003)

10

arbitrate illusory, and the dispute resolution agreement therefore fails for lack of consideration.

Altria makes two additional arguments in defense of the agreement. First, it argues that concerns over its power to unilaterally modify the dispute resolution agreement are "purely hypothetical," because Altria has not in fact exercised its right to modify the dispute resolution program since it was adopted in 2012. We determine whether an agreement is supported by consideration as of the time it was executed, however. *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 670 (Mo. 2010) (consideration "'must be measured at the time the parties enter into their contract'"; citation omitted). Whether or not Altria ultimately exercised its authority to modify the agreement is irrelevant.

Altria also argues that its right to unilaterally modify the dispute resolution agreement is "checked by the duty of good faith and fair dealing." Although the duty of good faith and fair dealing may in some circumstances be invoked to uphold an agreement against a claim that it is illusory, the duty of good faith and fair dealing "has nothing to do with the enforcement of terms actually negotiated and cannot block [the] use of terms that actually appear in the contract." *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 31 n.1 (Mo. App. W.D. 2008) (Ahuja, J., concurring) (citation omitted). "Thus, any implied duty of good faith and fair dealing could not 'trump' [Altria's] right to discontinue" or amend the program under the agreement's express terms. *Id.*[7] The duty of good faith and fair dealing could not be invoked to deny Altria its clear contractual right to modify the terms of

---

[7] As the California Court of Appeal explained in *Peleg*: "[i]f . . . a modification provision expressly addresses whether contract changes apply to claims that have accrued or are known to the employer, the covenant [of good faith and fair dealing] cannot create implied terms that contradict the express language." 140 Cal. Rptr.3d at 68; *accord, e.g.*, *Moua v. Optum Servs., Inc.*, 320 F. Supp. 3d 1109, 1114 (C.D. Cal. 2018); *Cummings-Reed v. United Health Group*, 2:15-CV-02359-JAM-AC, 2016 WL 1734873, at *3 (E.D. Cal. May 2, 2016); *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp.3d 1243, 1253 (C.D. Cal. 2016).

the dispute resolution agreement with respect to accrued-but-unasserted claims, unilaterally and without advance notice.[8]

## Conclusion

The dispute resolution agreement fails for lack of consideration because Altria's promise to arbitrate is illusory in light of its ability to unilaterally and materially modify the agreement.  We affirm the circuit court's order denying Altria's motion to compel arbitration.

_____
Alok Ahuja, Judge

All concur.

---

[8]     In its reply brief, Altria also argues that the modification provision could be severed, and the remainder of the dispute resolution agreement enforced.  Because this argument was not raised until Altria's reply brief, at which point Patrick had no opportunity to respond, it was not properly presented and we do not address it.  *See, e.g., State ex rel. Lavender Farms, LLC v. Ashcroft*, 558 S.W.3d 88, 94–95 (Mo. App. W.D. 2018) ("Issues not raised by appellants in their opening brief cannot be raised for the first time in the reply brief, and are not properly preserved."); *Blankenship v. Div. of Emp't Sec.*, 327 S.W.3d 579, 582 n.4 (Mo. App. S.D. 2010) (same).