IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
TELISSAH JOHNSON, )
 )
 Respondent, )
 )
v. ) WD84138
 )
MENARD, INC., ) Opinion Filed: July 27, 2021
 )
 Appellant. )

 APPEAL FROM THE CIRCUIT COURT OF PLATTE COUNTY, MISSOURI
 THE HONORABLE JAMES W. VAN AMBURG, JUDGE

 Division Three: Edward R. Ardini, Jr., Presiding Judge,
 Mark D. Pfeiffer, Judge and W. Douglas Thomson, Judge

 Telissah Johnson (“Johnson”) sued her former employer, Menard Inc. (“Menard”), in the

Circuit Court of Platte County alleging employment discrimination. Menard filed a motion to

compel arbitration, which was denied by the trial court. Menard appeals from that order. We

affirm.

 Factual and Procedural Background

 Johnson began working as a cashier at a Menard store in Kansas City, Missouri, on January

10, 2019. Upon beginning her employment, Johnson, an at-will employee, signed an

Employee/Employer Agreement (“EEA”) that, among other things, included an arbitration
provision. Approximately a month later, Johnson made a written complaint of race discrimination

to Menard’s human resources department. Two weeks after that, Johnson was terminated.

 Johnson filed a charge of discrimination with the Missouri Commission on Human Rights

(“MCHR”) alleging employment discrimination and retaliation. The MCHR issued her a right-to-

sue letter, and on March 8, 2020, Johnson initiated the underlying action against Menard in the

Circuit Court of Platte County.

 On April 10, 2020, Menard filed a Motion to Compel Arbitration, claiming that the EEA

she signed when she became employed by Menard required her to arbitrate her claims.1 The EEA

states, in relevant part:

 6. Remedy. Arbitration shall be the sole and exclusive forum and remedy for all
 covered disputes of either Menard, INC or me. Unless Menard and I agree
 otherwise, any arbitration proceedings will take place in the county of my Menard’s
 employment where the dispute arose. . . .

 These claims shall be resolved by binding arbitration with the American Arbitration
 Association (“AAA”) . . . under its current version of the National Rules for the
 Resolution of Employment Disputes. . . .

 7. Severability. I agree that if the scope or enforceability of any part of this
 Agreement is in any way disputed at any time, a court or arbitrator may modify and
 enforce the Agreement to the extent that it believes to be reasonable under the
 circumstances existing at that time.

 THIS DOCUMENT CONTAINS A BINDING ARBITRATION PROVISION
 WHICH MAY BE ENFORCED BY BOTH MENARD, INC AND ME. THE
 PARTIES ALSO AGREE THAT BOTH I AND MENARD, INC ARE EACH
 WAIVING THE RIGHT TO A TRIAL BY JURY OR PARTICIPATE IN A
 CLASS OR COLLECTIVE ACTION, OR CLASS OR COLLECTIVE
 ARBITRATION, AND THAT I AND MENARD, INC. EACH MAY BRING
 CLAIMS AGAINST THE OTHER IN MY OR ITS INDIVIDUAL CAPACITY
 ONLY AND NOT AS A CLASS MEMBER OR CLASS REPRESENTATIVE IN

1
 In its motion to compel arbitration, Menard made no assertion that the EEA contained a delegation provision that
required threshold issues of arbitrability to be resolved by the arbitrator. Instead, Menard’s suggestions in support of
its motion to compel arbitration stated that “a court must determine whether a valid agreement to arbitrate exists
between the parties, and whether the specific dispute falls within the scope of the agreement.” (emphasis added). It
was in its reply suggestions in support of its motion to compel arbitration that Menard first argued that the EEA
contained a “valid, bilateral [delegation] agreement to submit the issue of arbitrability to an arbitrator.”

 2
 ANY PURPORTED CLASS, COLLECTIVE OR REPRESENTATIVE
 PROCEEDING. I HAVE READ THIS ENTIRE AGREEMENT AND I FULLY
 UNDERSTAND THE LIMITATIONS WHICH IT IMPOSES UPON ME, AND I
 UNDERSTAND THAT THIS AGREEMENT CANNOT BE MODIFIED
 EXCEPT BY THE PRESIDENT OF MENARD, INC.

Johnson opposed the motion, arguing that the arbitration agreement contained in the EEA was not

a valid, enforceable contract because it lacked consideration and contained illusory promises; and

that collateral estoppel prohibited the trial court from compelling arbitration based on two circuit

court judgments involving similar arbitration agreements with other Menard employees. And,

although Menard’s motion to compel made no mention of the existence of a delegation clause,

Johnson’s opposition to the motion to compel directly challenged the enforceability of the

delegation clause in the agreement.2 Argument on the motion was held on April 10, 2020, and the

trial court granted Menard’s motion to compel arbitration.

 On August 10, 2020, Johnson filed a petition for a writ of mandamus with this Court. A

preliminary writ was issued expressing, in part, concern that the consideration supporting both the

delegation provision and the arbitration agreement as a whole was illusory, and ordering the trial

court to vacate its order granting Menard’s motion to compel arbitration or to show cause as to

why it should not do so. On September 1, 2020, the trial court vacated its order compelling

arbitration,3 and on November 2, 2020, the trial court entered an order denying Menard’s motion

to compel arbitration.4 Menard appeals from that denial.5

2
 In addition to noting that Menard’s motion to compel made no assertion that the arbitration agreement contained a
delegation provision granting an arbitrator exclusive jurisdiction to decide whether the agreement was valid and
enforceable and pointing out that Menard’s motion asked the trial court to enforce the arbitration agreement on the
merits, Johnson also argued that any promises made by Menard in the EEA were illusory.
3
 This Court then dismissed the petition for writ of mandamus as moot.
4
 The trial court’s denial of the motion to compel arbitration did not include any findings.
5
 An order denying a motion to compel arbitration is appealable under section 435.440, RSMo. Baker v. Bristol Care,
Inc., 450 S.W.3d 770, 773 (Mo. banc 2014).

 3
 Standard of Review

 “‘We review the circuit court’s denial of a motion to compel arbitration de novo.’”

Pinkerton v. Technical Educ. Servs., Inc., 616 S.W.3d 477, 481 (Mo. App. W.D. 2020) (quoting

Fogelsong v. Joe Machens Auto. Grp. Inc., 600 S.W.3d 288, 293 (Mo. App. W.D. 2020))

(additional citation omitted). Whether a dispute is covered by an arbitration agreement and whether

there is a valid, enforceable delegation clause in the arbitration agreement are legal issues that are

both reviewed de novo. Theroff v. Dollar Tree Stores, Inc., 591 S.W.3d 432, 436 (Mo. banc 2020)

(citations omitted).

 Discussion

 Menard raises four points on appeal, all asserting that the trial court erred in denying its

Motion to Compel Arbitration. In its first point, Menard argues that its motion to compel arbitration

should have been granted because the arbitration agreement includes a delegation clause, which

requires an arbitrator, and not the trial court, to decide threshold issues of arbitrability. In Points II

and III, Menard asserts that the arbitration agreement contained in the EEA was valid in that it was

supported by sufficient consideration.6 Finally, in its fourth point, Menard complains that circuit

court cases denying arbitration in cases with similar EEAs cannot constitute collateral estoppel,

arguing that “the previous cases involving Menard concerned contracts with different language

and Missouri caselaw has changed.”7

 “‘Arbitration is a matter of contract under the Federal Arbitration Act (FAA).’” Pinkerton,

616 S.W.3d at 482 (quoting Soars v. Easter Seals Midwest, 563 S.W.3d 111, 114 (Mo. banc 2018))

6
 Menard asserts in Point II that the arbitration agreement is a bilateral contract supported by mutual promises, and, in
Point III, that Menard’s offer of at-will employment constituted sufficient consideration.
7
 Because we find that neither the delegation provision nor the arbitration agreement is supported by valid
consideration, we do not address the collateral estoppel issue raised in Point IV.

 4
(additional citation omitted). “[P]arties to a contract may agree that an arbitrator rather than a court

will resolve disputes arising out of the contract.” TD Auto Fin., LLC v. Bedrosian, 609 S.W.3d

763, 768 (Mo. App. E.D. 2020) (citing Henry Schein, Inc. v. Archer and White Sales, Inc., 139

S.Ct. 524, 527 (2019); Ellis v. JF. Enters., LLC, 482 S.W.3d 417, 420 (Mo. banc 2016)). However,

“‘[a] party cannot be required to arbitrate a dispute that it has not agreed to arbitrate[,]’ and

arbitration will only be compelled where ‘a valid arbitration agreement exists and . . . the specific

dispute falls within the scope of that agreement.’” Hughes v. Ancestry.com, 580 S.W.3d 42, 47

(Mo. App. W.D. 2019) (quoting NutraPet Sys., LLC v. Proviera Biotech, LLC, 542 S.W.3d 410,

413-14 (Mo. App. W.D. 2017); Granger v. Rent-A-Ctr., Inc., 503 S.W.3d 295, 298 (Mo. App.

W.D. 2016)). “‘Just as the arbitrability of the merits of a dispute depends upon whether the parties

agreed to arbitrate that dispute, so the question ‘who has the primary power to decide arbitrability’

turns upon what the parties agreed about that matter.’” Id. (quoting Dotson v. Dillard’s, Inc., 472

S.W.3d 599, 603 (Mo. App. W.D. 2015); First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942

(1995)).

 Delegation Provision

 In Menard’s first point, it claims that the arbitration agreement signed by Johnson included

a delegation provision that required an arbitrator to decide threshold questions of arbitrability.

 “‘[A] delegation provision is an agreement to arbitrate threshold issues concerning the

arbitration agreement.’” Soars, 563 S.W.3d at 114 (quoting Rent-A-Ctr. W., Inc. v. Jackson, 561

U.S. 63, 68 (2010)). “Accordingly, it ‘is simply an additional, antecedent agreement the party

seeking arbitration asks the . . . court to enforce, and the [Federal Arbitration Act] operates on this

additional arbitration agreement just as it does on any other.’” Id. (quoting Rent-A-Ctr., 561 U.S.

at 70). “‘Generally, any silence or ambiguity concerning the scope of arbitrable issues should be

 5
resolved in favor of arbitration.’” Id. (quoting State ex rel. Pinkerton v. Fahnestock, 531 S.W.3d

36, 43 (Mo. banc 2017)). “However, when considering whether a court or an arbitrator should

decide threshold questions of arbitrability, there is generally a presumption against arbitrability.”

Id. (citing First Options of Chi., Inc., 514 U.S. at 944-45). “‘[C]lear and unmistakable evidence’

the parties manifestly intended to arbitrate questions of arbitrability is required to overcome this

presumption.” Id. (quoting Rent-A-Ctr., 561 U.S. at 69 n.1). “This ‘clear and unmistakable’

requirement . . . pertains to the parties’ manifestation of intent that issues of arbitrability be decided

by the arbitrator instead of the court.” Pinkerton, 531 S.W.3d at 43 (quoting Rent-A-Ctr., 561 U.S.

at 69 n.1).

 In the present case, the parties mutually agreed that the AAA National Rules for the

Resolution of Employment Disputes (“AAA rules”) would govern any claims brought by either

party under the EEA. Johnson does not dispute that the claims she has asserted in the underlying

action fall within the scope of the EEA and the arbitration provision contained therein. Moreover,

the relevant AAA rules provide that “[t]he arbitrator shall have the power to rule on his or her own

jurisdiction, including any objections with respect to the existence, scope, or validity of the

arbitration agreement.” The explicit reference in the arbitration agreement to the AAA rules, which

include the aforementioned provision, constitutes clear and unmistakable evidence that the parties

intended that threshold questions of arbitrability be determine by the arbitrator. See c.f. Cooper-

Dorsey v. Time Warner Cable, 591 S.W.3d 500, 506 (Mo. App. W.D. 2019) (finding that a

reference to the Judicial Arbitration and Mediations Services, Inc. rules “clearly and unmistakably

incorporated the delegation provision” within those rules); Pinkerton, 531 S.W.3d at 48 (finding

that a reference to the AAA rules in the arbitration agreement is sufficient to establish that the

parties intended to delegate threshold issues to arbitrability to an arbitrator). However, “[a]

 6
delegation provision may be invalidated, revoked, or otherwise found unenforceable upon such

grounds as exist in law or in equity for the revocation of any contract.” Hughes, 580 S.W.3d at 48

(quotation omitted). The contractual element at issue here is whether the delegation provision in

the EEA was supported by valid consideration.

 A delegation provision is a separate and distinct agreement and must be examined separate

from the underlying arbitration agreement. Soars, 563 S.W.3d at 114. Like any contract, a

delegation provision requires a mutual agreement between the parties. Id. at 116 (citing Baker, 450

S.W.3d at 776) (“A contract consisting of mutual promises to undertake some legal duty or liability

between parties is a bilateral contract.”). “In a bilateral contract, ‘a promise by one party to a

contract is a sufficient consideration for a promise by the other party.’” Id. (quoting Ragan v.

Schreffler, 306 S.W.2d 494, 499 (Mo. 1957)).

 “‘[B]ilateral contracts are supported by consideration and enforceable when each party

promises to undertake some legal duty or liability.’” Patrick v. Altria Grp. Distrib. Co., 570

S.W.3d 138, 143 (Mo. App. W.D. 2019) (quoting Baker, 450 S.W.3d at 777). “‘These promises,

however, must be binding, not illusory.’” Id. (quoting Baker, 450 S.W.3d at 777). “‘A promise is

illusory when one party retains the unilateral right to amend the agreement and avoid its

obligation.’” Id. (quoting Baker, 450 S.W.3d at 777); see also Morrow v. Hallmark Cards, Inc.,

273 S.W.3d 15, 30 (Mo. App. W.D. 2008) (Ahuja, J., concurring) (“Under well-established

contract law, an agreement in which one party retains the unilateral ability to avoid its contractual

obligations is illusory and unenforceable.”); Frye v. Speedway Chevrolet Cadillac, 321 S.W.3d

429, 442 (Mo. App. W.D. 2010) (“A contract that purports to exchange mutual promises will be

construed to lack legal consideration if one party retains the unilateral right to modify or alter the

 7
contract as to permit the party to unilaterally divest itself of an obligation to perform the promise

initially made.”).

 For example, in Patrick, this Court found that a promise was illusory when the agreement

gave a party “the unilateral right to make ‘material amendments’ to the dispute resolution

agreement, which may include ‘change[s] in the allocation of fees and costs, the Disputes covered,

or the limitations on remedies.’” 570 S.W.3d at 144. Similarly, in Baker, our Supreme Court found

a promise to arbitrate illusory where the employer retained the right to “amend, modify or revoke

[the] agreement upon thirty (30) days’ prior written notice to the Employee.” 450 S.W.3d at 776.

 Here, the unfettered authority to unilaterally modify the delegation provision retained by

Menard exceeded that at issue in both Patrick and Baker. The final sentence of the EEA states, “I

UNDERSTAND THAT THIS AGREEMENT CANNOT BE MODIFIED EXCEPT BY THE

PRESIDENT OF MENARD, INC.” This provision vested Menard, through its president, the

unlimited and unilateral right to modify any part of the EEA, including the delegation provision,

at any time and without notice to Johnson. In fact, under the auspices of this unqualified power,

Menard could eliminate the delegation clause.8

 Menard retained the unilateral authority to modify the delegation clause without limit or

notice to Johnson. This rendered Menard’s promises illusory, and “[s]uch illusory promises

provide no valid consideration.” Harris v. Volt Mgmt. Corp., 2021 WL 1972434, *7 (Mo. App.

8
 Menard acknowledged at oral argument that the above-mentioned provision vested its President with the unilateral
authority to modify, in any manner, Menard’s promise to delegate threshold issues of arbitrability, up to and including
the revoking of its promise to have such issues delegated to an arbitrator. Despite this admission to the direct
applicability of this power to modify the delegation clause, Menard nevertheless argued that we were not permitted to
consider this retained authority in our analysis of the validity of the delegation clause because its placement in the
agreement was not in immediate proximity to the delegation clause. While this Court is aware that a delegation clause
must be examined separate from the underlying arbitration agreement, this limitation does not preclude consideration
of any terms that are directly applicable to the delegation clause. As Menard made clear at oral argument, the power
of the President of Menard to unilaterally modify the agreement applies with full force to the delegation clause and
thus is relevant to our analysis of the validity of that clause.

 8
E.D. 2021) (promises to arbitrate and delegate threshold issues of arbitrability were illusory and

not valid consideration where party retained unilateral right to modify employment agreement

containing arbitration agreement and delegation provision without notice and at any time). As a

result, the delegation provision contained in the EEA is not enforceable.

 Point I denied.

 Validity of the Arbitration Agreement

 Having found that the trial court had the authority to determine threshold issues of

arbitrability, including the validity and enforceability of the arbitration agreement, we now turn to

the arbitration agreement itself.

 Menard argues in its second point that the arbitration agreement “is supported by valid

consideration in that, when severed, the arbitration provision is a valid, bilateral agreement by the

parties to submit their claims in arbitration.” The arbitration agreement itself, however, suffers

from the same infirmity as the delegation provision. Indeed, the unqualified right to unilaterally

modify retained by Menard through the EEA provided Menard the ability to amend or outright

eliminate, without limitation, its obligations under the arbitration agreement. As stated above, this

authority renders its promise to arbitrate disputes illusory. See Patrick, 570 S.W.3d at 144 (finding

that an arbitration agreement included illusory promises when it allowed an employer to make

“‘material amendments’ to the dispute resolution agreement, which may include ‘change[s] in the

allocation of fees and costs, the Disputes covered, or the limitations on remedies.’”); Baker, 450

S.W.3d at 776 (finding that an employer’s promise to arbitrate its claims against an employee were

illusory where the employer retained the right to “amend, modify or revoke [the] agreement upon

thirty (30) days’ prior written notice to the Employee.”).

 9
 Therefore, like the delegation provision, the arbitration agreement as a whole is founded

on Menard’s illusory promise to arbitrate disputes, and, as such, it lacks consideration and is

unenforceable.

 Point II denied.9

 Conclusion

 The order of the trial court overruling Menard’s motion to compel arbitration is affirmed.

 __________________________________________
 EDWARD R. ARDINI, JR., JUDGE

All concur.

9
 Because we find that the arbitration agreement lacked consideration, we need not address Menard’s third point,
which argued that the arbitration agreement did not lack consideration simply because it was part of an at-will
employment agreement.

 10